IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KEVIN RODRIGUES, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:20-cv-00338 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LT. HAMILTON, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

In this action, *pro se* plaintiff Kevin Rodrigues, a federal prisoner, asserts civil rights claims against eight individual defendants, all of whom worked at the United States Penitentiary in Lee County ("USP Lee"), where Rodrigues was incarcerated at the time of the events. The defendants are three lieutenants (Hamilton, Bowles, and Lafave) and five correctional officers (Ball, Bradburn, Brooks, Lawson, and Smallwood). Pending before the court is defendants' motion to dismiss, or, in the alternative, for summary judgment, brought on behalf of all defendants. (Dkt. No. 45.) Rodrigues has responded, defendants filed a reply, and then Rodriguez filed a sur-reply, defendants filed their own sur-reply, and Rodrigues later filed an affidavit. (Dkt. No. 56). Although none of these documents were authorized by the court, the court has nonetheless considered them.

Because the court has considered materials outside the pleadings submitted by both parties, the court will treat defendants' motion as one for summary judgment under Federal Rule of Civil Procedure 56, as opposed to a motion to dismiss. Because the undisputed evidence shows that Rodrigues failed to exhaust available administrative remedies, the court will grant defendants' motion.

I. BACKGROUND

A. **Evidence Considered**

The first issue to consider is what evidence is part of the summary judgment record. Rodrigues's complaints—his original and amended complaints—are both unsworn and unverified and thus need not be considered as summary judgment "evidence." *See Goodman v. Diggs*, __F.3d __, 2021 WL 280518, at *3 (4th Cir. Jan. 28, 2021) (noting the rule that a party cannot merely rely on matters pleaded in an unverified or unsworn complaint in responding to a summary judgment motion, but the contents of a verified complaint should be considered). Likewise, although some allegations appear in a part of his original complaint titled as an "affidavit," (Dkt. No. 1 at 2–3), that document contains no statement swearing to the truth of its contents or referencing the penalty of perjury. Some additional facts (and some that contradict his amended complaint) also appear in a sworn affidavit that he executed on December 22, 2020, after his extended deadline for responding to defendants' motion for summary judgment had expired.

Because they are either unsworn or untimely, the documents submitted by Rodrigues technically are not competent summary judgment evidence. Nonetheless, because defendants are entitled to summary judgment even if the court considers all of these documents, the court will consider the facts in the unsworn amended complaint (Dkt. No. 12), the original unsworn "affidavit," (Dkt. 1 at 2-3) and his recent, belated affidavit (Dkt. No. 56), as evidence, solely for purposes of this opinion. Those facts, in the light most favorable to Rodrigues, are set forth next.

B. **Factual Background**

In his amended complaint, Rodrigues alleges that, on January 28, 2020, defendant Ball placed him and his cellmate into hand restraints so that the cellmate could go to the shower,

2

although Rodrigues apparently declined a shower. Ball conducted a pat-down search of Rodrigues, and she found a needle in his pocket and then threw it away. Rodrigues insists that the sewing needle is an item that can be purchased as part of a sewing kit through any BOP commissary and is not contraband.

When they arrived at the showers, defendant Bradburn asked Rodrigues what Ball had taken, and Rodrigues responded, "The c**t took my sewing needle and threw it in the trash" and Rodrigues alleges that Ball and Bradburn then "introduce[d] his face to the floor" and jumped on top of him, hitting him with hands and knees while calling for an emergency response. (Am. Compl. 2, Dkt. No. 12.) Rodrigues argues that the force was unnecessary because he was still in hand restraints and was not showing any hostility or aggression. Rodrigues contends that Bradburn also drove his knee forcefully into the right side of his neck and held it there for a long time.

Rodrigues further alleges that the emergency response team arrived and all piled on top of him, hitting him with elbows and knees, while Bradburn was "out of control assaulting" him. Bowles then ordered that Rodrigues be placed in a restraint chair with leg restraints and taken to the Special Housing Unit. ("SHU"). He claims that he was then assaulted again in the SHU, while he was fully restrained in a chair and with leg restraints. Additionally, he contends that while placing him into a belly chain, officers initially placed it improperly and then tried to move it to the front of Rodrigues's body. During this, defendant Smallwood placed it on him too tightly and it later "ripped into his flesh" as they moved it.[1] Then, two different lieutenants

---

[1] Defendants also have presented undisputed evidence that Smallwood did not work at the institution at all on January 28 or January 29. Smallwood is entitled to summary judgment on that ground, as well.

(Hamilton and Lafave) directed defendant Lawson to punch Rodrigues while he was restrained and to continue punching him.

Rodrigues was later moved to a different room for a medical assessment. He alleges that before they turned the camera on, defendants Lafave and Brooks threatened him and said that if he said anything on camera about being assaulted or that he had any injuries, they would shut the camera off and "beat [him] to a pulp and start the process over until he complied." (*Id.* at 4.) He also alleges that, for every two hours afterward, officers would enter his cell and slam him with the shield while he was kneeling facing the wall. He states that during the first visit Brooks rammed him with the shield so hard that it "split [his] ear open." (*Id.* at 5.) Lastly, he alleges that when the officers attempted to place him in a helmet, Officer Lawson punched him very hard in his testicles and penis for no reason.[2]

## II. DISCUSSION

### A. Motion to Strike

Before turning to the summary judgment motion, the court first addresses Rodrigues's motion to strike, in which he asks the court to strike defendants' reply to his response. (Dkt. No. 57, seeking to strike Dkt. No. 53). Rodrigues argues that the affidavit of Richard Reece attached to the reply contains perjured testimony and so he asks that it be struck and that sanctions be

---

[2] Defendants have presented significant evidence calling into question Rodrigues's description of the events. This includes sworn evidence that the confiscated needle could not be purchased through the USP Lee's commissary, that it was bent (which alteration renders it contraband), and that it was thrown away because it was contraband. (Canfield Decl. ¶¶ 43–45, Dkt. No. 46-1.) It also includes various contemporaneous statements from involved officers describing Rodrigues's aggressive and threatening behavior during the initial incident, denying that any excessive force was used during or after that incident, and medical records showing the absence of many of the injuries Rodrigues claims that he sustained. Despite these many disputed facts, none of them are material or preclude the entry of summary judgment because the court is resolving Rodrigues's claims solely on the grounds that he failed to exhaust his administrative remedies. As a result, disputes over what actually happened in the underlying incident or whether excessive force was used against Rodrigues on either date are immaterial to the court's ruling.

awarded under Rule 11. Specifically, he disputes Reece's testimony that the camera footage from January 2020 is no longer available, and he asks for an order directing that the camera footage be acquired and produced.

First of all, Rodrigues's conclusory—and unsworn—assertion that Reece's testimony is false does not make it so. He offers no personal knowledge to dispute the unavailability of the video. Likewise, the fact that video of other, unrelated incidents had been preserved and used for investigation and prosecution years after an incident does not call into question Reece's specific testimony about the footage from this particular incident. Reece explained that the footage was not preserved here because the first time that the Bureau of Prisons ("BOP") received notice that Rodrigues was claiming staff had assaulted him was when they received notice of his lawsuit, approximately six months after the incident. Thus, the court sees no basis for the imposition of sanctions. Regardless, the video is irrelevant to the reasons for the grant of summary judgment, which is based solely on Rodrigues's failure to exhaust. For these reasons, the motion to strike (Dkt. No. 57) is DENIED.[3]

### B. Rule 56(d) Request

In his response to defendants' motion for summary judgment, Rodrigues discusses what proof he needs to support his case. In other documents, he also has requested discovery, including videos from various angles of the SHU from January 28 and 29, 2000. To the extent that he is arguing that he needs additional discovery to respond to the motion for summary judgment, *see* Fed. R. Civ. P. 56(d), the only evidence he seeks is evidence that pertains to

---

[3] There are two other motions pending before the court. The first, Rodrigues's motion for preliminary injunctive relief, (Dkt. No. 17) was mooted by his transfer approximately one month after he filed that motion, as the parties agree. (Pl.'s Resp. 3, Dkt. No. 52; Defs.' Reply 1, Dkt. No. 53.) The other pending motion is a motion for protective order (Dkt. No. 50), which is also moot in light of the court's ruling on summary judgment.

whether or not the underlying claims occurred as he contends, such as video evidence of the alleged beatings in the SHU. That evidence has no bearing on whether he failed to exhaust and so the court concludes that it is not necessary to allow additional discovery before ruling on the summary judgment motion.

### C. Motion for Summary Judgment

#### 1. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[4] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

---

[4] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

### 2. Exhaustion under the Prison Litigation Reform Act

The Prison Litigation Reform Act requires a prisoner-plaintiff to exhaust his available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

7

As to whether alleged threats by any correctional officer rendered the BOP's remedies "unavailable," the court applies a two-part test from the Eleventh Circuit's decision in *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008), which has been adopted in a number of other circuits.[5] *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (adopting the *Turner* test); *McBride v. Lopez*, 807 F.3d 982, 987-88 (9th Cir. 2015) (same); *Tuckel*, 660 F.3d at 1254 (same). The test requires an inmate to show: (1) subjectively, that "the threat did actually deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively, that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Rinaldi*, 904 F.3d at 268 (quoting *Turner*, 541 F.3d at 1085).

### 3. The BOP's Administrative Remedy Procedure

The BOP's administrative remedy procedure is relatively straightforward, and basically involves three steps: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal. Slightly different procedures apply to appeals of disciplinary hearings, but for a claim, like Rodrigues's, alleging staff misconduct, the first step requires the inmate to "present an issue of concern informally to the staff." 28 C.F.R. § 542.13(a). Each Warden has established procedures for inmates at his institution to do so. *Id.*

Second, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint (an "administrative remedy request") with the institution on the proper form within twenty calendar days of the incident at issue. *Id.* § 542.14(a). Generally, an inmate must

---

[5] The Fourth Circuit has not expressly adopted or rejected the *Turner* test. But nothing prohibits its use and the court concludes that it is both helpful and appropriate.

obtain the appropriate form (a BP-9 form) and return it to his correctional counselor. *Id.* § 542.14(c)(1), (4).

Third, an inmate has two levels of appeal that he may pursue. If an inmate is dissatisfied with the institutional Warden's response, he may appeal to the Regional Director within twenty calendar days of the Warden's response, using the appropriate form (a BP-10 form). *Id.* § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate form (a BP-11 form), within thirty calendar days of the date the Regional Director signed the response. *Id.* Appeal to the General Counsel is the final administrative appeal. *Id.* § 542.15(a).

Significantly, a BOP prisoner who fears for his safety in filing a complaint or informal complaint at his facility may file a "sensitive" request directly to the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1). This alternative avenue for pursuing his administrative remedies, which would have allowed him to avoid having to submit a remedy to anyone at USP Lee, was available to Rodrigues. (Canfield Decl. ¶ 47, Dkt. No. 46-1.)

### 4. Rodrigues's Failure to Exhaust

Rodrigues has offered inconsistent and contradictory accounts of his exhaustion attempts. In the unsworn "affidavit" attached to his amended complaint, he acknowledged that he did not exhaust administrative remedies "because of the threats made during the beating" and because he has not felt safe and was too intimidated to file. (Pl.'s Decl. 1, Dkt. No. 12-1.) He also states that "another beating occurred" in June 2020—six months after his—and points to another inmate's lawsuit for support. (*Id.*)

Then, in response to defendants' motion to dismiss, Rodrigues begins by stating, in conclusory fashion, that he did exhaust his remedies and is still waiting for a response from the

9

regional director. (Resp. 2, Dkt. No. 52.) He also discusses his various appeals of disciplinary charges arising from this incident. Then, at the conclusion of the same document, he states that "even if plaintiff didn't exhaust his administrative remedies, which he did, exhaustion should be excused because [he] was intimidated to challenge anything with several beatings occurring after plaintiff's." (*Id.* at 3.)

In a later-filed document, though, he offers yet a third version of events concerning exhaustion. (Dkt. No. 54.) In that document, he suggests that he did exhaust (although again without offering any detail), and then suggests—without any evidence—that unspecified staff members threw away the administrative remedies he filed. (*Id.* at 9.) In a sworn affidavit filed with this court on December 28, 2020, more than six months after he filed suit and after his deadline for responding to the summary judgment motion had expired, he elaborates on this version of events. There, for the first time ever in this lawsuit, he alleges that he filed an informal complaint (a BP-8) on February 6, 2020, and gave it to the "unit manager of Building #2, J. Griffin." (Pl.'s Aff. 4, Dkt. No. 56.) He avers that he never received a response and, when he asked for a BP-9, he was told he needed to submit a copy of the BP-8 response with it. Because he never received a response, he states that he was not allowed to file administrative remedies.

As an initial matter, disputes of fact are not created by conflicting versions of events presented by the same party. *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975 ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.") (citation omitted). Moreover, at least until recently, Rodrigues's statement that he exhausted, in addition to contradicting his complaint and earlier submissions, was unsupported by any detail and thus cannot satisfy his

10

burden of showing that remedies were unavailable. *See Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment.").

Although he has now provided an alleged date and person to whom he gave his informal complaint form, his assertion that he could not proceed with the other steps of the process because he did not receive back a response to his BP-8 is unsupported by any evidence. In particular, he does not allege that he attempted to file a BP-9 but was prevented from doing so. Thus, even if a jury were to credit his belated testimony that his BP-8 was either destroyed or never responded to, he has not provided any evidence as to why he did not pursue the other steps in the grievance process. He also could have filed a sensitive request when he did not receive a response to his BP-8, but he did not do so. In short, he has not shown that the failure to receive a response to his BP-8 rendered administrative remedies unavailable.

In addressing his initial version of events, which is that he did not file any administrative remedy because he was intimidated and feared retaliation, a general fear of "retaliation" does not render administrative remedies "unavailable." *See id.*; *Wilson v. Kiser*, No. 7:17cv00092, 2017 WL 4613195, at *4 (W.D. Va. Oct. 16, 2017) ("Wilson apparently believes that the officers threatened his safety in some way, but he simply states no facts showing that such fears were reasonable or that their actions 'thwarted the effective invocation of the administrative process.'"). Moreover, as noted above, a prisoner who fears retaliation for filing an internal complaint may file a "sensitive" request instead, requesting relief directly from the Regional

11

Director. If Rodrigues was sufficiently concerned about retaliation or another beating by anyone at USP Lee, he could have filed a sensitive request. He did not and he offers no valid reason for not doing so.

Third, and despite Rodrigues's claims that he did not file because he feared retaliation, Rodrigues in fact filed administrative remedies in the same time-frame, such as appeals from the disciplinary convictions he received for his conduct on January 28, 2000. (*See* Canfield Decl. ¶¶ 46, 48 & Ex. 1, Dkt. No. 46-1.) He also filed this lawsuit while he was still housed at USP Lee, further undermining any suggestion that he feared retaliation to a sufficient degree that he was thwarted from exhausting his remedies. Put differently, any claim that remedies were unavailable to Rodrigues "is belied" by the fact that he actually filed other administrative remedies during the same time. *Stohl v. Eastern Reg'l Jail*, No. 1:14CV109, 2015 WL 5304135, at *7 (N.D.W. Va. Sept. 8, 2015); *see also Pickens*, 2017 WL 3277121, at *5 (concluding that remedies were not unavailable, in part because the plaintiff submitted other grievances during the relevant time period). Under the *Turner* test described above, this fact is particularly probative. As noted, *Turner* requires that the threat both be sufficiently serious that it would objectively deter a reasonable prisoner from filing a grievance and also a threat that subjectively deterred that particular plaintiff. 541 F.3d at 1085. Under that test, Rodrigues's filing of other administrative remedies and this lawsuit severely undermines any suggestion that any alleged threats *subjectively* deterred him.

For all of these reasons, Rodrigues has failed to show that he exhausted his available administrative remedies so as to entitle him to relief.

III.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted.

An appropriate order setting forth that ruling and the other rulings above will be entered.

**ENTER**: This 5th day of February, 2021.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE